Revised December 31, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-50946
_____


UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

v.

JESUS HERNANDEZ-GUEVARA,

                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

December 11, 1998

Before KING, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

     Defendant-appellant Jesus Hernandez-Guevara appeals his

conviction for conspiracy to transport aliens, illegal

transportation of aliens, and misprision of a felony.  We affirm

the conviction.  Hernandez also appeals his sentence, arguing

that the district court erred in requiring that the three-year

supervised release term assessed for his conviction run

consecutive to the supervised release term for an earlier

conviction.  We agree and modify the sentence accordingly.

I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 28, 1997, after receiving a telephone tip that a smuggler would be transporting a group of undocumented aliens in the area, United States Border Patrol agents set up surveillance on U.S. Highway 277 between the Texas towns of Eagle Pass and Carrizo Springs. Some agents were posted at two rest areas, approximately thirteen and twenty-four miles east of Eagle Pass; others were stationed along the highway closer to Carrizo Springs. About an hour and a half after the Border Patrol set up surveillance, Agent Jaime Kypuros, who was hiding in the brush near the second rest area, saw a blue van traveling west on Highway 277 toward Eagle Pass. The van slowed near the rest area and put on its turn signal, but Kypuros and his partner could not see whether it actually entered the rest stop. Between thirty and fifty minutes later, Kypuros saw the van again, this time traveling east on the highway. A white Lincoln Continental was following about a quarter-mile behind the van. Agent Mario Ramirez, who was stationed five miles east of Kypuros, saw both vehicles pass twice; he estimated that they were two to three miles apart when traveling west and five miles apart on the return trip.

As the vehicles proceeded toward Carrizo Springs, Agent Rodolfo Benavides, who was stationed east of Ramirez, saw the van turn left onto Highway 191, which leads to U.S. Highway 83 and Crystal City, Texas. Driving an unmarked truck, Benavides followed the van for eight miles, to the intersection of Highways

191 and 83, where he stopped it. The driver of the van was Mike Trevino; the eight other occupants were all undocumented aliens from Mexico. After other agents arrived to assist Benavides, the Lincoln, which Benavides estimated had been traveling three to four miles behind the van, approached. The Lincoln slowed when the driver saw the agents and the van, and Benavides flagged the car down, displaying his credentials. Joe Sanchez was driving the car; the passenger was defendant-appellant, Jesus Hernandez-Guevara (Hernandez), also known by the nickname "Chuy." The agents arrested Trevino, Sanchez, Hernandez, and the aliens.

The evidence against Hernandez at trial included testimony from the Border Patrol agents who stopped the vehicles, Sanchez, and two of the aliens. Sanchez, who had pleaded guilty and received a probated sentence, told the jury that he had agreed to give Hernandez a ride from his home to Eagle Pass to pick up a transmission. As they passed the first rest stop, Sanchez noticed people entering a blue van, and Hernandez remarked that these individuals were "his." They continued driving for another five miles, but then Hernandez told Sanchez to turn back. At that point, Sanchez testified, he realized for the first time that the people being picked up were undocumented aliens. He became angry at Hernandez and drove on in silence until stopped by the Border Patrol. Sanchez concluded that he had been brought along to look for Border Patrol agents, but claimed that he did no scouting. He did admit that Hernandez offered him money at

3

some point during the trip, although it is not clear from his testimony whether the payment was to be compensation for scouting or for driving Hernandez to Eagle Pass. At any rate, when they saw that the van had been detained, Hernandez told Sanchez not to say anything to the agents.

Two of the aliens, Juan Padron-Silva and José Norberto Ortega-Martinez, provided additional evidence against Hernandez in the form of post-arrest statements admitted by stipulation at trial. Padron-Silva stated that he entered the United States the day before his arrest; he had been told to wait for a smuggler, and the van had picked him up. He was to be charged $600.00 for his transportation. Ortega-Martinez described similar events. He added that the smuggler's name was "Chuy," a name he recognized because he had been transported to Oklahoma by a man named Chuy two years earlier. From a photo lineup, Ortega-Martinez identified Hernandez as the "Chuy" who had smuggled him before.

In addition to testimony about the offenses with which Hernandez was charged, the evidence at trial included references to his past misconduct. The government's first witness, Agent Kypuros, testified that the multiple-agent surveillance was established in response to a telephone call. Consistent with his pretrial motion in limine, Hernandez objected that this was irrelevant and prejudicial hearsay. The district court overruled the objection, and Kypuros stated that "[b]ased on the phone

4

call," the agents "prepared to go out to the highway and set up in an effort, in an attempt to apprehend an alien smuggler." After describing the logistics of the stakeout, he added that in setting up surveillance, he and another agent hid in the brush. The following exchange ensued:

> Q  [by Assistant United States Attorney Robert Cadena] Why did you hide in the brush?
> A  Because in the past, on several occasions--
> MR. VILLARREAL [defense counsel]:  Your Honor, I'm going to object on relevancy grounds to anything that may have happened in the past.  It's speculative.  It has no relevance to the facts before the jury in this case.
> THE COURT:  Overruled.
> MR. CADENA:  You may answer.
> THE WITNESS:  Okay.  Based on Border Patrol experience and intelligence reports many--
> MR. VILLARREAL:  I'll object to any testimony concerning intelligence reports as offering hearsay.
> THE COURT:  Sustained.  Sustained as to intelligence report.
> BY MR. CADENA:
> Q  Based on your training and intelligence why were you hiding in the brush?
> A  I had seen, on several occasions, Mr. Hernandez travel on that highway.

Defense counsel objected to this answer and moved for a mistrial, arguing that an instruction would not cure the error.  The trial court agreed that "to instruct on it just exacerbates and magnifies it" but denied the motion for mistrial.

Border Patrol Agent Robert Edwards also testified about Hernandez's past misconduct.  Over objection, Edwards stated that in 1996, he arrested Hernandez driving thirteen aliens in a truck.  At the bench before Edwards gave this testimony, defense counsel objected that the prosecutor had not offered a theory to support the introduction of the evidence.  The trial court

5

overruled that objection, and in response to Hernandez's request for an on-the-record balancing of the probative value of Edwards's testimony against its prejudicial effect, it stated: "But at least the Court has the impression that the defensive theory, slash, argument would be that Mr. Hernandez-Guevara was just out looking for car parts and happened to be in the wrong place at the wrong time. And, therefore, the probative value outweighs any improper prejudicial effect." The district court did not give a limiting instruction immediately after Edwards's testimony.

After Edwards took the stand, United States Probation Officer Victor Calderon also testified to Hernandez's prior misconduct, stating that Hernandez had been convicted in 1979 and 1996 of transporting aliens. After admitting this evidence, the court instructed the jury that it could consider the convictions for the "very limited" purposes of

> determin[ing] whether the defendant had the state of mind or intent necessary to commit the crime charged in the indictment in this case or whether this defendant had a motive or opportunity to commit the acts charged in this indictment, or whether this defendant acted according to a plan or in preparation for the commission of a crime, or whether the defendant committed the acts for which he is on trial by accident or mistake or not.
> And these are the very limited purposes for which evidence of these other similar acts may be considered by you.

Hernandez then moved for a mistrial "in view of the limited instruction." The court overruled the motion.

6

During his closing argument, the prosecutor repeatedly referred to Hernandez's past misconduct. He suggested, for example, that the jury "start by looking at the past" to determine whether Hernandez "is responsible for this crime." The prosecutor then told the jury that the evidence about the past was called "Rule 404(b) evidence" and could be used for a "very limited purpose":

> Basically, that evidence was presented so that you can see, was this some kind of mistake? Was somebody there at the wrong place at the wrong time? Was it innocent behavior out there that was being exhibited by the defendant, Chuy Hernandez, when he just happened to be going past when the aliens were being picked up and driving back following the alien load? Is that all innocent behavior?

The district court overruled Hernandez's objection to this argument. Later, the prosecutor urged the jury to "look at it in the context of 404(b) material. Look at it in the context of intent. Look at it in the context of lack of mistake." Hernandez did not object or move for a mistrial on this basis. Finally, the prosecutor asserted:

> The fact is that this man is guilty by clear and convincing evidence based on all the actions that were going on out there and all the observations by trained anti-smuggling unit agents, based on the coconspirator's statements that you heard and Joe Raymundo Sanchez what was going on in the car, based upon the 404(b) material that you heard.

Hernandez objected that the prosecutor was "arguing [the extrinsic evidence] again as direct evidence, as character evidence." The court sustained the objection but denied the motion for mistrial.

7

Some confusion arose at trial about whether Hernandez was on bond at the time of the offenses complained of.  The source of the confusion and the district court's response thereto will be discussed in greater detail infra.

The jury convicted Hernandez of conspiracy to transport aliens, two counts of illegal transportation of aliens, aiding and abetting an offense against the United States, and misprision of a felony, in violation of 18 U.S.C. § 371, 8 U.S.C. 1324(a)(1), 18 U.S.C. § 2, and 18 U.S.C. § 4.  At the time of sentencing, Hernandez was serving an unexpired sentence of one year in prison for his 1996 conviction and was subject to a three-year term of supervised release for that conviction.  The district court sentenced him to twenty-four months imprisonment on the conspiracy and transportation charges and twelve months imprisonment on the misprision count, to run concurrently with each other but consecutively to the prison term in the 1996 case. In addition, the court imposed a three-year period of supervised release to run consecutively to the 1996 term of supervised release.  Hernandez appealed both his conviction and his sentence.

## II.  DISCUSSION

A.  Evidence of Extrinsic Offenses

On appeal, Hernandez argues that the district court abused its discretion by allowing, over objection, testimony that he smuggled aliens in the past.  Specifically, he contends that the

8

district court should have excluded (1) Border Patrol Agent Robert Edwards's testimony that he arrested Hernandez transporting aliens in 1996, (2) evidence that Hernandez had been convicted of alien smuggling in 1979 and 1996, and (3) Border Patrol Agent Jaime Kypuros's reason for hiding in the brush, which Hernandez claims amounted to an assertion that Hernandez was a known alien smuggler.  He also challenges the district court's limiting instructions as inadequate because they simply listed the permissible uses of extrinsic offense evidence, rather than specifying which uses applied in Hernandez's case.

1.  Standard of Review

Where the party challenging the trial court's evidentiary ruling makes a timely objection, we review that ruling under an abuse-of-discretion standard.  See United States v. Westmoreland, 841 F.2d 572, 578 (5th Cir. 1988).  Such review is necessarily heightened in a criminal case, however, which demands that "evidence . . . be 'strictly relevant to the particular offense charged.'"  United States v. Hays, 872 F.2d 582, 587 (5th Cir. 1989) (quoting Williams v. New York, 337 U.S. 241, 247 (1949)).  Similarly, where the appellant preserves error, an abuse-of-discretion standard applies to our review of the district court's instructions to the jury.  See United States v. Townsend, 31 F.3d 262, 270 (5th Cir. 1994).  We also review the denial of motions for mistrial or a new trial for abuse of discretion.  See United

9

States v. Soto-Silva, 129 F.3d 340, 343 (5th Cir. 1997), cert. denied, 118 S. Ct. 1822 (1998).

Where the party challenging the district court action fails to make a timely objection, however, we review only for plain error. See United States v. Burton, 126 F.3d 666, 671 (5th Cir. 1997). Federal Rule of Criminal Procedure Rule 52(b) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." FED. R. CRIM. P. 52(b). In applying this rule, the appellate court must determine (1) that there was an error, that is, a deviation from a legal rule, (2) that the error is "plain," meaning obvious, and (3) that the error affected substantial rights, meaning that it must be prejudicial and affect the outcome of the district court proceeding. See United States v. Olano, 507 U.S. 725, 731-35 (1993). The defendant, not the government, bears the burden of persuasion with respect to prejudice. See id. at 734. Finally, because plain error review is discretionary rather than mandatory, the court of appeals should correct a plain error affecting substantial rights only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 736 (internal quotation marks omitted); see also United States v. Mansolo, 129 F.3d 749, 751 (5th Cir. 1997) (setting forth plain error standard).

    2.  Analysis

Although extrinsic offense evidence is not admissible to prove the defendant's bad character and action in conformity therewith, it may be introduced to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See FED. R. EVID. 404(b).  Interpreting Rule 404(b), we have stated:

> What the rule calls for is essentially a two-step test.
> First, it must be determined that the extrinsic offense
> evidence is relevant to an issue other than the defendant's
> character.  Second, the evidence must possess probative
> value that is not substantially outweighed by its undue
> prejudice and must meet the other requirements of rule
> 403.

United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).

Hernandez first contends that his prior smuggling activities are irrelevant, as shown by the prosecution's inability adequately to articulate reasons for introducing them.  This argument lacks merit.  As a preliminary matter, we find that the government did make it clear to the jury that it should consider the extrinsic offense evidence as probative of intent and lack of mistake.  During his closing argument, for example, the prosecutor stated:

> Where do you start?  I submit to you you start by looking at
> the past.  This is what this evidence is about, the--well,
> you can use it for a limited purpose.  It's what we call
> Rule 404(b) evidence.
>     Basically, that evidence was presented so that you can
> see, was this some kind of mistake?  Was somebody there at
> the wrong place at the wrong time?  Was it innocent behavior
> out there that was being exhibited by the defendant, Chuy

11

Hernandez, when he just happened to be going past when the aliens were being picked up and driving back following the alien load?  Is that all innocent behavior?

The prosecutor clearly indicated to the jury that it should consider evidence of Hernandez's prior bad acts for the "very limited purpose" of showing absence of mistake.  Later, he explained again that the extrinsic offense evidence showed intent and lack of mistake:

> [H]ow do you know he's not an observer?  How do you know he's not just some person that's on the side of the road?
>      Basically because you've seen the progression.  You've seen the progression of how to accomplish this.  And you look at it in the context of 404(b) material.  Look at it in the context of intent.  Look at it in the context of lack of mistake.

Thus, the prosecution emphasized that the "404(b) material" was to be used to show intent and lack of mistake, thus rebutting Hernandez's defense that he was simply in the wrong place at the wrong time.  Hernandez's assertion that the government is obligated to state both the specific purpose for which extrinsic offense evidence is being offered and the chain of inferences leading from it to a fact of consequence is supported only by out-of-circuit authority.  See United States v. Murray, 103 F.3d 310, 316 (3d Cir. 1997), cert. denied, 119 S. Ct. 254 (1998); United States v. Merriweather, 78 F.3d 1070, 1076 (6th Cir. 1996).  It is true, of course, that we have held that the government generally should explain why a defendant's prior bad acts are relevant.  In United States v. Fortenberry, 860 F.2d 628, 633 (5th Cir. 1988), for example, we found that the

12

"government's inability to articulate the probative value of the [extrinsic offense] evidence, as well as the weakness of the evidence linking Fortenberry to the extrinsic offenses, warrants the conclusion that the primary impact of the evidence on the proceedings was to increase the prejudice against Fortenberry." The Fortenberry prosecutor had, at different times, defended the evidence as establishing motive, intent, opportunity, identity, and plan. See id. This bears a superficial resemblance to Hernandez's case, in which the prosecutor suggested during a pretrial motion in limine hearing that the jurors could use the extrinsic offense evidence "to determine whether or not there was motive, intent, opportunity, design, lack of mistake. And that's what we intend to offer it on." Here, however, the government did ultimately make clear why the evidence was introduced and what elements of the defense it was intended to rebut.

We also agree with the prosecution and the trial court that evidence that Hernandez had been convicted of two previous alien smuggling offenses is relevant to his intent and the absence of mistake or accident. Hernandez's defense at trial was that he had traveled to Eagle Pass to obtain car parts, that he coincidentally fell in behind a van of illegal aliens, and that Joe Raymundo Sanchez, himself a convicted felon, implicated him in an attempt to gain favor with the Border Patrol agents. Evidence that Hernandez had, on past occasions, smuggled aliens with a guilty intent makes it more likely that he was not

13

innocently looking for car parts.  Cf. United States v. Robles-Vertiz, 155 F.3d 725, 730 (5th Cir. 1998) (holding that evidence of the defendant's previous alien smuggling activities was admissible to show lack of mistake where his defense to the latest smuggling charge was that he believed the alien to be a United States citizen); United States v. Cheramie, 51 F.3d 538, 541-42 (5th Cir. 1995) (holding that evidence of the defendant's prior drug smuggling activities was admissible to show knowledge and intent); United States v. Williams, 900 F.2d 823, 827 (5th Cir. 1990) (holding that evidence of the defendant's prior mailings of drugs from California to New Orleans was admissible to show knowledge and intent in the charged mailing).

Having found that the extrinsic offense evidence was relevant, we turn to the second prong of the Beechum analysis. On this point, Hernandez contends that the prejudicial effects of his prior bad acts substantially outweighed their probative value.  He makes two subarguments:  First, he claims that the district court failed to conduct an adequate on-the-record balancing of the extrinsic offense evidence's prejudicial effects and probative value.  Second, he asserts that the court neglected to give proper limiting instructions regarding the purposes for which the jury could consider the evidence.  We address these contentions in turn.

We have held that the Beechum probative value/prejudice inquiry must be articulated on the record upon a party's request.

14

See <u>United States v. Robinson</u>, 700 F.2d 205, 213 (5th Cir. 1983).

We acknowledge that we have implied that conclusory statements do

not meet the <u>Robinson</u> articulation requirement.  <u>See</u> <u>United</u>

<u>States v. Zabaneh</u>, 837 F.2d 1249, 1264 (5th Cir. 1988).  In

<u>Zabaneh</u>, the district court simply announced, "I have made the

balancing judgments that are called for in the <u>Beechum</u> opinion at

pages 909 to 915."  <u>Id.</u>  It is not clear, however, that <u>Zabaneh</u>

requires reversal simply because the trial judge's articulation

of the <u>Beechum</u> probative value/prejudice inquiry lacks detail,

for the <u>Zabaneh</u> court also rested its decision on the fact that

the judge erroneously believed that evidence should be excluded

as unduly prejudicial only where it would "inflame the jury's

passions."  <u>Id.</u> at 1265.  Indeed, we suggested in a more recent

opinion that the result in <u>Zabaneh</u> hinged on the fact that the

court in that case affirmatively misunderstood the required

<u>Beechum</u> balancing.  <u>See</u> <u>United States v. Osum</u>, 943 F.2d 1394,

1403 (5th Cir. 1991).  In <u>Osum</u>, we declined to remand for

additional <u>Beechum</u> probative value/prejudice findings where the

trial judge responded to the defendant's argument that the

evidence did not possess adequate probative value when measured

against its prejudicial effect by saying:  "Well, I think it

does, and I just have to satisfy myself by another reading of

<u>Beechum</u> here for a minute."  After a brief recess, defense

counsel repeated his point that if the prejudicial effects

substantially outweighed the probative value, the evidence would

15

have to be excluded. The court responded: "That's right. If I felt that that's what it was, and I do not, I do not, okay." Id. at 1402. On appeal, we held that such a statement was adequate "at least where, as here, the following three factors are present: there is no express request for such findings; the trial court expressly states that it has made the Beechum probative value/prejudice weighing and finds that the prejudice does not substantially outweigh the probative value; there is nothing to indicate that the trial court misunderstood or misapplied the Beechum test." Id. at 1403. Although Hernandez did explicitly ask for Beechum findings, the trial judge in this case offered considerably more than did his counterparts in Zabaneh and Osum: He stated the defense theory that the extrinsic evidence would rebut and concluded that, given this theory, the probative value of the evidence outweighed any prejudicial potential. We decline to conclude that the district court abused its discretion.

Nor can we say that the district court abused its discretion in finding that the probative value of Hernandez's prior convictions was not substantially outweighed by its possible prejudicial effects. Similarity between the elements of the extrinsic offense and those of the charged offense may enhance the probative value of the extrinsic offense evidence. See United States v. Bermea, 30 F.3d 1539, 1562 (5th Cir. 1994) (citing Beechum, 582 F.2d at 913). In this case, the extrinsic evidence involved the same crime--alien smuggling--as was charged

16

in the indictment.  Of course, a close resemblance between the extrinsic offense and the charged offense also increases the unfair prejudice to the defendant.  See id. (citing Beechum, 582 F.2d at 915 n.20).  But here, Hernandez's prior misconduct lacked the hallmarks of highly prejudicial evidence.  See Fortenberry, 860 F.2d at 632.  They were not violent acts, nor were they greater in magnitude than the crimes for which Hernandez was on trial, nor did they occupy more of the jury's time than the evidence of the charged offenses.  Furthermore, the probative value of Rule 404(b) evidence "is not an absolute; it must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference."  Beechum, 582 F.2d at 914; see Williams, 900 F.2d at 827; United States v. Henthorn, 815 F.2d 304, 308 (5th Cir. 1987).  The probative value of the extrinsic offense evidence was relatively great:  Hernandez based his defense on a claim that he was merely in the wrong place at the wrong time and had been framed by Sanchez.  Other than Sanchez's testimony, the admitted evidence shed little light on Hernandez's intent and whether his alleged crime was the result of mistake or accident.  For these reasons, we decline to overturn the district court's probative value/prejudicial effect balancing.

We also reject Hernandez's suggestion that the district court abused its discretion in admitting the 1979 conviction because it was stale and had been excluded during the motion in

17

limine hearing.  The age of a prior conviction has never been held to be a per se bar to its use under Rule 404.  See United States v. Broussard, 80 F.3d 1025, 1040 (5th Cir.), cert. denied, 117 S. Ct. 264 (1996).  We have held that a fifteen-year-old conviction for the same type of crime as that for which the defendant is currently on trial is admissible to show intent, especially where the other evidence of guilt is not strong.  See United States v. Chavez, 119 F.3d 342, 346-47 (5th Cir.), cert. denied, 118 S. Ct. 615 (1997).  Although Hernandez's 1979 conviction was nearly eighteen years old, it involved exactly the same crime as was charged in the indictment.  Therefore, we cannot say that the district court abused its discretion in admitting this conviction.  Hernandez also complains that the prosecutor introduced this conviction without prior court approval, in flagrant disregard of a pretrial motion in limine. The record shows that the motion in limine extended to a 1978 arrest, which resulted in a conviction.  At trial, the prosecution claimed that the 1979 conviction introduced was not the evidence that the court already had excluded.  Even if it was, we find that its introduction did not rise to the level of prosecutorial misconduct, as the prosecution apparently believed that the 1979 conviction was not barred by the motion in limine.[1]

_____

[1]  The Presentence Investigation Report in Hernandez's 1996 case, United States v. Hernandez, No. DR-96-CR-178 (W.D. Tex. Feb. 11, 1997), suggests that the prosecutor may have been correct.  Under Hernandez's criminal history, the report lists

18

Furthermore, it was properly admitted under Rule 404(b) and, as we discuss below, the jury was properly instructed on the limited purposes for which the evidence could be considered. See United States v. Merkt, 794 F.2d 950, 963 n.15 (5th Cir. 1986) (declining to find reversible error under similar circumstances).

Second, we consider whether the district court failed to give adequate instructions limiting the purposes for which the jury could consider the evidence. Hernandez claims that even assuming that the evidence was admissible to show absence of mistake, the court's instructions "went far beyond that purpose, telling the jury that it could rely on the convictions to show state of mind or intent, motive, or opportunity, plan or preparation, or accident or mistake." At trial, however, Hernandez did not object to the court's instructions, nor did he offer any suggestion regarding them. We therefore review only for plain error. See United States v. Cortinas, 142 F.3d 242, 248 (5th Cir.) (reviewing for plain error where parties challenging the limiting instructions as being erroneous or inadequate failed to object or propose that other, preferable instructions should have been given), cert. denied, 119 S. Ct. 224 (1998), and cert. denied, No. 98-6654, 1998 WL 772941 (U.S. Nov. 30, 1998).

---

both an arrest on January 20, 1978 for aiding and assisting the illegal entry of an alien, to which Hernandez pled guilty on January 30, 1978, and an April 12, 1979 arrest for the same charge, to which Hernandez pled guilty on April 17, 1979.

19

The district court instructed the jury immediately after the prosecution introduced evidence of the 1996 and 1979 convictions that it could use that evidence only for the limited purposes permitted by Rule 404(b).  In its instructions to the jury, the court reiterated this admonition.  We have found no plain error where the district court failed to give a limiting instruction regarding extrinsic offense evidence altogether.  See United States v. Prati, 861 F.2d 82, 86-87 (5th Cir. 1988) (holding that there was no plain error where a district court failed to give a limiting instruction regarding extraneous acts and offenses where court did warn the jury that the defendant was "not on trial for any act or conduct or offense not alleged in the indictment").  If a district court does not commit plain error by neglecting to give a limiting instruction, we do not see how it does so by reciting the permissible uses of extrinsic offense evidence as laid out in Rule 404(b).  It is true, of course, that we implied in United States v. Anderson, 933 F.2d 1261, 1272-73 (5th Cir. 1991), that an instruction listing all the permissible Rule 404(b) uses for extrinsic offense evidence was too broad.  However, Anderson also involved a situation in which the government never articulated the probative value of the evidence, see id. at 1268,  and the entire presentation of the evidence was tainted by the fact that the court made no ruling that the jurors could reasonably find that the defendant committed the extrinsic crimes, see id. at 1273.  In fact, it was not even clear from the

20

record that the Anderson trial judge conducted the Beechum analysis.  See id.  We did not hold in Anderson, nor have we so held since, that giving a broad instruction is, without more, reversible error, and we decline to do so now.[2]

We also find that the district court did not err by providing limiting instructions only after the government introduced Hernandez's convictions and in its final instructions to the jury.  Hernandez did not request a limiting instruction after Edwards testified, and he stated that Kypuros's remark could not be cured with any instruction.  In any case, a district court need not provide a limiting instruction each and every time a prior bad act is introduced into evidence.  See United States v. Asibor, 109 F.3d 1023, 1033 (5th Cir.), cert. denied, 118 S. Ct. 254, and cert. denied, 118 S. Ct. 638 (1997).

B.  Prosecutorial Misconduct

Hernandez also argues that his conviction should be reversed because the government argued his extrinsic bad acts as substantive evidence of guilt.

1.  Standard of Review

_____

[2]  It is not entirely clear what standard of review the Anderson court applied when reviewing the district court's instructions.  At the beginning of its discussion, the court asserted generally that it would "reverse only for an abuse of discretion."  Anderson, 933 F.2d at 1267-68.  It did not, however, make any mention of whether the defendant-appellant had preserved error with respect to the limiting instruction.

21

In reviewing a claim of prosecutorial misconduct, we must decide whether the misconduct casts serious doubt upon the correctness of the jury's verdict.  See United States v. Willis, 6 F.3d 257, 263 (5th Cir. 1993).  We consider three factors: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction.  See United States v. Casel, 995 F.2d 1299, 1308 (5th Cir. 1993).  Improper prosecutorial comments require reversal only if the comments substantially affected the defendant's right to a fair trial.  See Bermea, 30 F.3d at 1563 (citing United States v. Diaz-Carreon, 915 F.2d 951, 956 (5th Cir. 1990)).  We accord wide latitude to counsel during closing argument, and we also give some deference to the district court's determination regarding the prejudicial or inflammatory nature of those arguments.  See id. at 1563.

2.  Analysis

The record demonstrates that the government never attempted to argue Hernandez's prior bad acts as substantive evidence of guilt.  Hernandez contends that the prosecution made two explicit references to his prior offenses:  At the beginning of his closing argument, the Assistant United States Attorney told the jury that it should begin by looking to the past, to the "Rule 404(b) evidence," and toward the end of his closing, he urged the jury to consider the evidence "in the context of 404(b)

22

material."  As noted above, the prosecution's explicit references to the prior offenses were followed by urging the jury to use them only for specific purposes.  We do not believe this constitutes arguing extrinsic offenses as substantive evidence of guilt.

Hernandez also contends that the prosecutor twice intimated that he was a professional alien smuggler by stating that tandem smuggling was "about trying to distance yourself from the crime that you've committed" and suggesting that Hernandez had progressed from aiding and abetting to transporting aliens himself to distancing himself from the load by using someone else's car.  The first reference to tandem smuggling, however, contained absolutely no suggestion that Hernandez had been convicted of past smuggling offenses.  The second reference was made just after the prosecutor urged the jury to view the Rule 404(b) evidence in the context of intent and lack of mistake. Contrary to Hernandez's assertion that the prosecutor was suggesting that he was a professional smuggler who should be punished regardless of his guilt of the present charges, the challenged remarks suggested only that Hernandez's innocent-bystander defense was not worthy of belief.  Finally, the prosecutor's remarks that Hernandez viewed alien-smuggling as a business rather than a philanthropic attempt to improve the lives of Mexican citizens contained no reference to the past offenses. We find that the prosecutor engaged in no misconduct and that,

23

therefore, the district court did not abuse its discretion by permitting the challenged argument.

C.   District Court's Comments

Hernandez also complains he was denied a fair trial because the district court "instructed" the jury that it was "satisfied" that Hernandez was on bond at the time of his arrest, thereby (1) depriving Hernandez of the right to have a jury determine all factual issues, (2) improperly testifying, and (3) suggesting to the jury that the court was biased in favor of the prosecution. Some background on this "instruction" is in order.

Towards the end of the trial, Probation Officer Calderon identified the judgment covering Hernandez's 1996 smuggling conviction, for which Hernandez was sentenced on January 31, 1997.  Defense counsel elicited from Calderon that he had been present at Hernandez's sentencing on January 31 and that Hernandez had been in the custody of the U.S. Marshal at the time.  Counsel then questioned how, if he was in custody awaiting sentencing, Hernandez could have committed the crimes alleged in the indictment on January 28.  On redirect, Calderon testified that Hernandez had been out on bond on that date, but defense counsel objected that Calderon had no personal knowledge of Hernandez's bond status, and the court sustained the objection. At an on-the-record bench conference, the district court told counsel that "[s]omehow or other we've got to clear up this, perhaps, misconception that [Hernandez] wasn't out there on

24

January 28th which is a great defensive tactic."  Noting that pretrial service and marshal records showed that Hernandez had been on bond on January 28, the court indicated its desire to tell the jury what "the court records indicate."  Hernandez's counsel objected that pretrial service documents are not admissible at trial.

At the court's suggestion, the government called courtroom deputy Gloria Vela as a witness, but she was unable definitively to confirm Hernandez was on bond on January 28.  The government then requested permission to call Stacy Salinas of the U.S. Pretrial Services Office.  The court responded:

> If you think it's necessary.  But I now see a--I have in here in the court record an agreed motion to set the bond signed by Dan Newsome, attorney for the defendant, and Robert Cadena, attorney for the United States.  And then next, on September the 4th, 1996, I find an order that I signed approving the agreed motion to set the bond.

Nevertheless, the government proceeded to examine Salinas, who testified that Hernandez called in to report to pretrial services on January 27, that her office received notice of his arrest on January 29, and that she interviewed Hernandez on January 30. The court then told the jury, "Ladies and gentlemen, you're--you are instructed that the Court is satisfied that Mr. Jesus Hernandez-Guevara was not in federal custody and was out on bond as of January 28th, 1997."  Hernandez's counsel moved for a mistrial "to protect the record" and objected "to the Court's statements as being a comment on the weight of the evidence."

25

The mistrial was denied and the objection was overruled, and the government rested its case.

1.  Standard of Review

The objection that Hernandez's counsel made, i.e., that the "instruction" was a comment on the weight of the evidence, did not provide an adequate predicate for Hernandez's argument on appeal that the instruction deprived Hernandez of his right to have the jury determine all factual issues.  Accordingly, we review this challenge for plain error.  See United States v. Jobe, 101 F.3d 1046, 1061 (5th Cir. 1996), cert. denied, 118 S. Ct. 81 (1997).  The objection arguably does provide an adequate predicate for Hernandez's second and third arguments that the "instruction" constituted improper judicial testimony and suggested to the jury that the court was biased in favor of the prosecution.  In reviewing these challenges, we must "determine whether the judge's behavior was so prejudicial that it denied the defendant a fair, as opposed to a perfect, trial."  Bermea, 30 F.3d at 1569 (citations omitted).  In doing so, we examine the trial court's actions in the context of the entire record.  See United States v. Saenz, 134 F.3d 697, 702 (5th Cir. 1998) (quoting United States v. Lance, 853 F.2d 1177, 1182 (5th Cir. 1988)).

2.  Analysis

    a.  Refusing to Submit a Fact Issue to the Jury

26

We consider first Hernandez's claim that by "instructing" the jury that it was "satisfied" that Hernandez was on bond at the time of his arrest, the district court improperly removed an issue of fact from the province of the jury. In a criminal case, "no fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truths." United States v. Johnson, 718 F.2d 1317, 1322 (5th Cir. 1983) (en banc) (quoting Roe v. United States, 287 F.2d 435, 440 (5th Cir. 1961)).

In this case, as we said above, we apply plain error review to determine whether such a mistake even occurred. As we noted in Subsection II.A.1, plain error exists only where (1) there was an error, (2) the error is "plain," and (3) the error affected substantial rights. After reviewing the record as a whole, we find it questionable whether there was Johnson error at all, much less plain error. The court was merely trying to forestall any confusion potentially resulting from Hernandez's suggestion that because he was in federal custody at his sentencing for another offense on January 31, 1997, he was also in custody on January 28 and so could not have committed the crime charged in the indictment. Hernandez conceded in his opening statement that he was in the Lincoln, and his defense throughout the trial was that he was simply in the wrong place at the wrong time. Nearly every witness testified that he was in the Lincoln at the time of his arrest. It was only after the government called two witnesses to

27

testify to Hernandez's bond status that the court, apparently in an attempt to avoid confusing the jury and drawing out the proceedings longer than necessary given the non-issue of Hernandez's presence in the Lincoln, made its statement.  We also note that the court emphasized to the jury that it was the ultimate judge of the facts and that it should not interpret any judicial remarks as a comment on the weight of the evidence.  We do not believe that the court intended to preempt the jury's determination as to Hernandez's whereabouts on January 28.

        b.  Improper Judicial Testimony and Appearance of Bias

We find it doubtful that Hernandez's objection that the judge's statement was a "comment on the weight of the evidence" preserves error as to his final two arguments.  Assuming without deciding that it did and that the court abused its discretion, we find the error harmless.  A nonconstitutional error in a federal criminal case[3] requires reversal only if it had substantial and injurious effect or influence in determining the jury's verdict.  See generally Brecht v. Abrahamson, 507 U.S. 619, 631-32 (1993) (discussing harmless error standard for nonconstitutional error).  Both of Hernandez's contentions essentially assert that the judge signaled his views to the jury and that they might have credited

---

    [3]  A breach of the Federal Rules of Evidence does not, in itself, offend the Constitution, rising to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. Cf. United States v. Lane, 474 U.S. 438, 446 n.8 (1986) (noting the nonconstitutional nature of improper joinder).

28

his view that Hernandez was not on bond.  But we do not see how the judge's comment could have had a substantial and injurious effect on the verdict in Hernandez's case.  There was overwhelming evidence, as we noted above, that Hernandez was in the Lincoln at the time of his arrest.

D.  Consecutive Terms of Supervised Release

Finally, Hernandez argues that the district court erred as a matter of law in requiring that the three-year supervised release term for his 1997 conviction run consecutive to the three-year term of supervised release on his 1996 conviction, United States v. Hernandez, No. DR-96-CR-178 (W.D. Tex. Feb. 11, 1997).  Thus, Hernandez claims, he is now wrongly subject to six, rather than three, years of post-incarceration supervision.

1.  Standard of Review

We review the district court's application of the Sentencing Guidelines de novo, see United States v. Sylvester, 143 F.3d 923, 931 (5th Cir. 1998), and its factual findings for clear error, see United States v. Upton, 91 F.3d 677, 687 (5th Cir. 1996), cert. denied, 117 S. Ct. 1818 (1997).  A sentence will be upheld on appeal unless it was imposed in violation of law, imposed as a result of an incorrect application of the sentencing guidelines, or outside the range of the applicable sentencing guideline and is unreasonable.  See United States v. Wyjack, 141 F.3d 181, 183 (5th Cir. 1998) (citing United States v. Garcia, 962 F.2d 479, 480-81 (5th Cir. 1992)).

## 2. Analysis

Federal law mandates that once a criminal defendant is released from prison, his supervised release term must run concurrently to any other supervision to which he is subject:

> The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release.

18 U.S.C. § 3624(e). Under a plain reading of the statute, Hernandez's supervised release term for the 1997 conviction must run concurrently to <u>any</u> supervised released term for another offense, including the 1996 alien smuggling offense. <u>Cf.</u> <u>United States v. Gonzales</u>, 520 U.S. 1, 5, 9-10 (1997) (reading the phrase "any other term of imprisonment" to include, without limit, all terms of imprisonment to which a defendant may be subject). Indeed, at least two of our sister circuits have held that § 3624(e) prohibits consecutive supervised release terms. <u>See</u> <u>United States v. Bailey</u>, 76 F.3d 320, 323-24 (10th Cir.), <u>cert. denied</u>, 116 S. Ct. 1889 (1996) ("The meaning of [§ 3624(e)] clearly dictates that the district court erred in sentencing Appellant to consecutive terms of supervised release for separate offenses."); <u>United States v. Gullickson</u>, 982 F.2d 1231, 1236 (8th Cir. 1993) (holding that § 3624(e) "unambiguously states that terms of supervised release on multiple convictions are to run concurrently").

The government's arguments in support of the sentence lack merit. The United States points out that 18 U.S.C. § 3583, which empowers federal courts to impose supervised release, requires judges to "consider the factors set forth in § 3553(a)" when crafting a sentence. See 18 U.S.C. § 3583(a), (c). Section 3553(a) directs the court to take into account, inter alia, "the circumstances of the offense and the history and characteristics of the defendant." See 18 U.S.C. § 3553(a)(1). In this case, the government argues, Hernandez was subject to an undischarged term of imprisonment on his 1996 conviction, and the sentencing guidelines therefore allowed the district court to impose either concurrent or consecutive terms of imprisonment. See U.S. SENTENCING GUIDELINES MANUAL § 5G1.3(c) (1997). The district court explicitly found, based on his "record," that Hernandez needed "to be under supervision for as long as we can possibly keep him under supervision." But the fact that the district court had statutory and guideline authority to impose consecutive prison terms for Hernandez's 1996 and 1997 convictions has no bearing on the question of whether he properly sentenced Hernandez to consecutive terms of supervised release. Even when federal law requires consecutive terms of imprisonment, the supervised release term "is to run concurrently with any other term of supervised release imposed." Id. § 5G1.2 commentary. More broadly, § 3553(a)'s general requirement that courts consider characteristics specific to the defendant and his crime when

31

fashioning a sentence does not nullify § 3624(e)'s explicit prohibition on consecutive supervised release terms. "Given this clear legislative directive, it is not for the courts to carve out statutory exceptions based on judicial perceptions of good sentencing policy." Gonzales, 520 U.S. at 10 (discussing 18 U.S.C. § 924(c)).

Our inquiry does not end here, however. We must also determine whether we can modify Hernandez's sentence to comply with § 3624(e) or whether we must remand for resentencing. Most of the time when we find that the district court has committed harmful error at sentencing, we must vacate and remand for resentencing. See United States v. Williams, 961 F.2d 1185, 1187 (5th Cir. 1992) (citing Williams v. United States, 503 U.S. 193, 204-05 (1992)). When the record shows that the district court made it clear that the defendant should be sentenced to the maximum term permitted by the guidelines, we need not waste judicial resources by remanding for what undoubtedly would be a rote resentencing. See United States v. Mills, 9 F.3d 1132, 1139 (5th Cir. 1993); United States v. Tello, 9 F.3d 1119, 1131 n.42 (5th Cir. 1993). In Hernandez's case, the district court explicitly stated that, as far as it was concerned, Hernandez should be under supervision for as long as possible. So, instead of vacating and remanding for resentencing by the district court, we modify the consecutive feature of the supervised release term imposed by the district court so that the supervised release term

32

will run concurrently with the term of supervised release imposed in <u>United States v. Hernandez</u>, No. DR-96-CR-178 (W.D. Tex. Feb. 11, 1997), and affirm Hernandez's sentence as thus modified.[4]

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of conviction and AFFIRM the sentence as modified.

---

[4] We thus modify the first two sentences of the supervised release section of the judgment in <u>United States v. Hernandez-Guevara</u>, DR-97-CR-44, at 3 (W.D. Tex. Oct. 31, 1997), to read: "Upon release from imprisonment, the defendant shall be on supervised release for a term of 3 years on each of Counts 1, 2, and 3, and 1 year on Count 4, to run concurrently. These terms of supervised release shall run concurrently with the term of supervised release imposed in DR-96-CR-178, <u>United States of America v. Jesus G. Hernandez</u>." The remainder of the judgment in <u>Hernandez-Guevara</u>, No. DR-97-CR-44, shall remain the same.