ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. Subsequent to receiving two federal sentences in 1999, Ray Charles Lenoir pled guilty to forgery and possession of a controlled substance. As a result of his guilty pleas, Lenoir was convicted of both crimes and sentenced to two fifteen-year terms of incarceration, both of which were suspended, and one five-year term of post-release supervision (PRS). Both sentences were ordered to run consecutively to Lenoir’s federal sentences. Upon release from federal custody, Lenoir began a term of federal supervised release. A few months after his release from federal custody, Lenoir was arrested for possession of cocaine.
 

 ¶ 2. Soon after his arrest Lenoir’s suspended state sentences were revoked, and he was ordered to serve twenty-five of the originally sentenced thirty years, with five years suspended. Lenoir filed a petition for post-conviction relief (PCR) seeking to overturn the revocations, but his motion was summarily denied. On appeal, this Court reversed the trial court’s ruling and remanded Lenoir’s case for an evidentiary hearing.
 
 Lenoir v. State,
 
 943 So.2d 113, 114(¶7) (Miss.Ct.App.2006). Upon com
 
 *1058
 
 pletion of the evidentiary hearing on remand, Lenoir’s motion was denied. The instant appeal followed, and Lenoir claims that: (1) he was sentenced in error after the revocation of his PRS, and (2) the trial court erred in revoking his suspended sentences. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶3. Lenoir’s saga began on July 14, 1998, when he was arrested for uttering a forgery and possession of a controlled substance. However, prior to moving forward on the state charges, Lenoir was sentenced on two charges in the United States District Court Northern District of Mississippi on June 18, 1999. His federal sentences were set to begin on July 17, 1999, and included prison time and a term of supervised release. Later that month, Lenoir pled guilty in the Monroe County Circuit Court to the two state charges pending against him. As a result of his conviction on the forgery charge, Lenoir was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC). Lenoir was given credit for time served, the balance of the sentence was suspended, and Lenoir was placed on PRS for five years. Similarly, on the possession charge, Lenoir was sentenced to serve fifteen years in the custody of the MDOC and given credit for time served. The balance was suspended based upon completion of the term of PRS imposed with the forgery sentence. Both state sentences were ordered to run consecutively to each other and consecutively to Lenoir’s federal sentences.
 

 ¶4. In February 2003, Lenoir was released from federal custody and placed on federal supervised release. Three months after his release from federal custody, Lenoir was arrested by the Aberdeen Police Department (APD) and charged with possession of a controlled substance.
 
 [1]
 
 Subsequent to his arrest, the APD served Lenoir with a search warrant for his home in May 2003 on suspicion of the possession and sale of cocaine. During the search, an unidentified quantity of cocaine was found. As a result of his illegal activity and additional violations of the conditions of his state PRS, a warrant was issued for Lenoir’s arrest and a petition to revoke his suspended sentences was filed with the Monroe County Circuit Court in September 2003. The trial court found that Lenoir violated the terms and conditions of his PRS and revoked both suspended sentences. He was ordered to serve the balance of the fifteen years for the forgery charge and ten of the fifteen years on the possession charge with the remaining five years suspended.
 

 ¶ 5. Lenoir filed several motions with the trial court requesting reconsideration of the revocations, an evidentiary hearing, and summary judgment. The trial court denied all of Lenoir’s motions in December 2004. After another unsuccessful motion requesting that the trial court make additional findings, Lenoir appealed the trial court’s initial denial of his motion for PCR without an evidentiary hearing.
 
 Lenoir,
 
 943 So.2d at 114(¶ 3). We found that an evidentiary hearing should be granted and reversed and remanded the case.
 
 Id.
 
 at 114(¶ 7). The trial court conducted an evi-dentiary hearing on February 14, 2007. Subsequently, Lenoir’s PCR motion was denied again. The details of the trial court’s holding will be discussed below as needed. Lenoir timely filed the instant appeal.
 

 ANALYSIS
 

 ¶ 6. Our standard of review of a trial court’s denial of an inmate’s motion
 
 *1059
 
 for PCR is two-tiered. Findings of fact will not be overturned unless we can say they are clearly erroneous, while conclusions of law will be reviewed de novo.
 
 Id.
 
 at 114(¶ 4).
 

 I. WHETHER LENOIR WAS SENTENCED IN ERROR SUBSEQUENT TO THE REVOCATION OF HIS PRS.
 

 ¶ 7. Lenoir’s 1999 conviction for uttering a forgery involved a check in the amount of $250. At that time, Mississippi Code Annotated section 97-21-33 (1999) provided that the sentencing range for forgery involving values over one hundred dollars was imprisonment from two to fifteen years. As a result of his conviction, Lenoir was sentenced to the maximum term of imprisonment in the custody of the MDOC to run consecutively to his federal sentence. However, his state sentence was suspended, and Lenoir was placed on PRS. Following his release from federal custody, Lenoir violated the terms of his state PRS and his previously suspended fifteen-year sentence was revoked at the conclusion of a September 2003 revocation hearing. Lenoir claims that the 2003 trial court’s “sentence” was illegal in light of an amendment to section 97-21-33, effective July 1, 2003, in which the Legislature reduced the maximum sentence allowed for forgeries involving less than $500 to six months’ imprisonment. Additionally, Lenoir claims that he was entitled to a “milder” sentence pursuant to section 99-19-33 (Rev.2007) which states:
 

 If any statute shall provide a punishment of the same character, but of milder type, for an offense which was a crime under pre-existing law, then such milder punishment may be imposed by the court but no conviction, otherwise valid, shall be set aside and new trial granted merely because of an error of the court in fixing punishment.
 

 However, Lenoir confuses the date of the revocation of his sentence with the actual date of his sentence — the latter being the vital date.
 

 ¶ 8. In support of his position, Lenoir cites
 
 Johnson v. State,
 
 824 So.2d 638 (Miss.Ct.App.2002). However,
 
 Johnson
 
 does not benefit Lenoir’s argument. In
 
 Johnson,
 
 the issue was whether the trial court should sentence a defendant during resentencing in accordance with the code section in effect when the defendant was initially sentenced or in accordance with the amended code section in effect at the time the defendant was resentenced.
 
 Johnson,
 
 824 So.2d at 640(¶ 5). In affirming the trial court’s decision to resentence Johnson under the amended statute, we noted that the supreme court interpreted section 99-19-33 to mean that “when a statute is amended to provide for a lesser penalty,
 
 and the amendment takes effect before sentencing,
 
 the trial court must sentence according to the statute as amended.”
 
 Id.
 
 at 640(¶7) (quoting
 
 Daniels v. State,
 
 742 So.2d 1140, 1145(¶17) (Miss.1999)) (emphasis added).
 

 ¶ 9. Lenoir’s procedural situation is quite different. Lenoir was sentenced subsequent to his 1999 conviction in accordance with and within the sentencing range of the pre-amendment version of section 97-21-33. However, this sentence was suspended, and Lenoir was placed on PRS. Mississippi Code Annotated section 47-7-34(2) (Rev.2004) provides that the “[p]roce-dures for termination and recommitment [for failure to abide by the terms and conditions of the PRS] shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence.” Upon violation of the conditions of a defendant’s PRS, a trial court “may continue or revoke all or any part of the probation or the suspension of sentence, and may cause the sentence im
 
 *1060
 
 posed to be executed or may impose any part of the sentence which might have been imposed at the time of conviction.” Miss.Code Ann. § 47-7-37 (Rev.2004). When Lenoir violated the conditions of his PRS, the suspension was revoked, and Lenoir was ordered to serve the remainder of his sentence. Lenoir was not resentenced as in
 
 Johnson,
 
 but ordered to serve the sentence he received prior to the amendment of section 97-21-33. This issue is without merit.
 

 II. WHETHER THE TRIAL COURT ERRED IN DENYING LENOIR’S MOTION FOR PCR.
 

 ¶ 10. Lenoir’s remaining issues center around the central issue of whether the trial court correctly denied his motion for PCR. Essentially, Lenoir argues that the trial court erred in revoking his suspended sentences. He claims that since the state sentences were ordered to run consecutively to his federal sentences, his state sentences could not begin to run until his entire federal sentence was completed. Therefore, according to Lenoir, because he was on federal supervised release, which was part of his federal sentence, his state PRS had not begun yet. Thus, he claims it was impossible for him to violate the conditions of the state PRS.
 

 ¶ 11. In finding against Lenoir, the trial court framed the issue, which the State echos on appeal, as one of jurisdiction between state and federal sovereigns. The trial court stated, “[the] [petitioner is attempting to convince the [trial court] that when a prisoner is released on Federal [supervised release], he is immune from any state court until his [supervised release] years have passed.” The trial court reasoned that “as soon as a sovereign releases an inmate on parole, it relinquishes primary jurisdiction [to proceed with criminal charges against the former inmate].” We agree with the trial court’s conclusion that “when a defendant or a parolee is released from actual custody, even for temporary purposes, he may be arrested, tried[,] and convicted by any other sovereign in the territory in which he may be without the consent of the first sovereign .... ”
 
 Strand v. Schmittroth,
 
 251 F.2d 590, 599 (9th Cir.1957). However, this conclusion does not decide the case. This is because jurisdiction was not the determinative issue as to whether Lenoir was on state PRS at the time he was arrested on May 10, 2003. The answer to that question lies in the meaning and effect of the word “consecutive.”
 

 12. We will begin our analysis of the issue with a brief survey of pertinent federal sentencing law. Federal supervised release is similar to Mississippi’s PRS in that “[t]he [federal] court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment....” 18 U.S.G. § 3583(a) (2006). However, consecutive terms of supervised release are an impossibility as federal law mandates that a “term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release.” 18 U.S.C. § 3624(e) (2006). As a plain reading of the statute would suggest, the subsequent terms of supervised release must be served concurrently, even if a prisoner’s total sentence includes multiple consecutive terms of imprisonment.
 
 United States v. Hernandez-Guevara,
 
 162 F.3d 863, 877 (5th Cir.1998). Therefore, under federal law a term of supervised release must run concurrently to any other term of post-imprisonment supervision. Thus,
 
 *1061
 
 under the realm of federal sentencing law, Lenoir’s argument must fail.
 

 ¶ 13. While federal law is certainly persuasive to the outcome of the situation at hand, we must decide this case based upon the law of this state. Trial courts are allowed to include a term of PRS “in addition to any other punishment imposed if the other punishment includes a term of incarceration in a state or local correctional facility....” Miss.Code Ann. § 47-7-34(1) (Rev.2004). Further, “[t]he defendant shall be placed under post-release supervision upon release from the term of incarceration.”
 
 Id.
 
 This language would seem to bolster Lenoir’s argument as it suggests that a term of PRS
 
 shall
 
 commence at the conclusion of the term of incarceration to which it was attached. However, notwithstanding the lack of discretion normally accompanying the word “shall,” Mississippi Code Annotated section 99-19-21(1) (Rev.2007) provides that “[w]hen a person is sentenced to imprisonment on two (2) or more convictions, the imprisonment on the second, or each subsequent conviction shall, in the discretion of the court, commence either at the termination of the imprisonment for the preceding conviction or run concurrently with the preceding conviction.” Obviously, the former of the two options amounts to a consecutive sentence.
 

 ¶ 14. An example of the interrelation of sections 47-7-34 and 99-19-21 would be beneficial. A defendant is convicted of two separate eximes and given two separate consecutive sentences, each including a term of incarceration of ten years and a term of PRS for five years, for a total of twenty years of incarceration and ten years of PRS. At the conclusion of the defendant’s first ten-year term of incarceration, section 47-7-34 suggests that the defendant must begin his first term of PRS, and this is the position Lenoir takes on appeal. This is an absurd result as it would require the defendant in this example after enjoying five years of freedom while on PRS to then report back to the MDOC so that his second ten-year term of incarceration may be fulfilled. However, section 99-19-21 resolves this issue and requires the defendant’s second term of imprisonment to be served “at the termination of the imprisonment for the preceding conviction.” Thus, in this example, the defendant would be required to remain in pi’ison for a total of twenty years (assuming his sentence was to be served day-for-day) before he could begin his first term of PRS. Finally, unlike federal sentencing law, our Legislature did not place any limits on a trial court’s ability to sentence a defendant to subsequent terms of consecutive PRS. Therefore, in our example, the defendant would begin his first five-year term of PRS upon release from incarceration, and then he would begin his second five-year term of PRS upon completion of the first.
 

 ¶ 15. Returning to the case at hand, Lenoir’s sentencing order stemming from his conviction on the charge of uttering a forgery stated, in part, that:
 

 IT IS, therefore, ORDERED AND ADJUDGED by the Court that the Defendant be and he/she hereby sentenced to serve a term of FIFTEEN (15) year(s) in the custody of the Mississippi Department of Corrections.... After receiving credit for time served, the balance shall be and the same is hereby suspended
 
 and, the defendant shall be placed under Post-Release Supervision upon the release from the term of
 
 incarceration.... Said sentence in this cause shall run consecutively with [the sentence imposed for Lenoir’s state conviction for possession] and with [the sentences imposed as a result of his federal convictions].
 

 (Emphasis added). Lenoir’s sentence resulting from his conviction of possession of
 
 *1062
 
 crack cocaine was substantially similar and stated, in part, that he was:
 

 sentenced to serve a term of fifteen (15) year(s) in the custody of the Mississippi Department of Corrections. After receiving credit for time served, the balance of said sentence is hereby suspended conditioned upon defendant's successful completion of post-release supervision in [Lenoir’s sentence for uttering a forgery]. Additionally, said sentence shall run consecutively with [the sentence imposed for Lenoir’s state conviction for uttering a forgery] and with [the sentences imposed as a result of his federal convictions].
 

 As mentioned above, Lenoir claims that his state PRS could not have begun because he had not yet completed his federal term of supervised release. Under federal sentencing law, Lenoir’s argument must fail as a term of supervised release must run concurrently with any other term of supervised release, including the PRS, that Lenoir is subject to. However, as mentioned above, our state jurisprudence as to when Lenoir’s state sentences began must decide the day.
 

 ¶ 16. As a result of his guilty pleas for uttering a forgery and possession of crack cocaine, the trial court sentenced Lenoir to two fifteen-year terms of incarceration, suspended the vast majority of the prison time for both, and placed Lenoir on one five-year term of PRS. Additionally, the trial court ordered the sentences to run consecutively to one another and to the federal sentences Lenoir was currently serving. However, the sentencing order for uttering a forgery makes clear that while the sentence was to run consecutively to the other state sentence and the federal sentences imposed, it was the trial court’s intention that Lenoir “be placed under Post-Release Supervision upon the release from the term of incarceration. ...” Section 99-19-21(1) makes clear that subsequent consecutive terms of incarceration shall be served immediately after one another.
 
 See generally Stewart v. State,
 
 845 So.2d 744, 748(¶15) (Miss.Ct. App.2003) (applying section 99-19-21(1) in affirming a trial court’s order of a state term of imprisonment consecutive to a federal term of imprisonment). When Lenoir was released from federal incarceration, he was required to complete the consecutive incarceration portion of his state sentences pursuant to section 99-19-21(1). However, because the trial court gave Lenoir credit for time served and suspended the balance of his fifteen-year sentences, upon his release from federal incarceration Lenoir simultaneously satisfied the initial incarceration portion of his state sentences, i.e., time served. Thus, Lenoir completed his state term of incarceration upon release from his federal incarceration. Therefore, per the trial court’s sentencing order, Lenoir was placed on state PRS at the moment he was released from federal custody.
 

 ¶ 17. In light of our discussion above, we find that Lenoir was on state PRS at the time he was arrested. As such, we find that the trial court did not err in denying Lenoir’s motion for PCR. This issue is without merit.
 

 ¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONROE COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR.
 

 [1]
 

 . In November 2003, Lenoir pled guilty to the new charge of possession of a controlled substance and was sentenced to serve one year in the custody of the Monroe County Jail.