DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Kenneth Scott Ditzler, appeals his conviction and his sexually violent predator adjudication in the Lorain County Court of Common Pleas. We affirm.
 I.
On June 8, 1999, Mr. Ditzler was chaperoning a group of boys in their early teens on a camping trip in Findley State Park in Lorain County, Ohio. The group partook of various types of alcohol, including beer and a watermelon spiked with rum. Pornographic magazines were also present and were viewed by the group of boys. By around 11:00 p.m. that night, the group became tired and retired to the tents that they had erected earlier. Mr. Ditzler occupied a tent with two of the boys, one of them being Luke.
Luke testified that he awoke early the next morning when Mr. Ditzler began to perform oral sex upon him. However, Mr. Ditzler testified that Luke awoke during the night in a sweat and disoriented from an apparent nightmare. Luke then went to the nearby restroom. He then went to his brother's tent, where he spent the remainder of the night. The next morning, Luke told his bother that Mr. Ditzler had performed oral sex upon him. However, his brother did not initially believe Luke's statements and demanded that Luke confront Mr. Ditzler with his accusations before he would believe his brother's accusation. Luke confronted Mr. Ditzler at the campground and then left for home with his brother.
Upon arriving home, Luke contacted the City of Lorain Police Department. Detective Carpentiere conducted an investigation of the incident. On June 30, 1999, Mr. Ditzler was indicted on nineteen counts: (1) rape by force or threat of force, in violation of R.C.2907.02(A)(2); (2) gross sexual imposition by force or threat of force, in violation of R.C. 2907.05(A)(1); (3) five counts of disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(1); (4) six counts of contributing to the delinquency of a minor, in violation of R.C. 2919.24(A)(1); and (5) six counts of furnishing alcohol to minors, in violation of R.C. 4301.69. On January 26, 2000, the State filed another indictment, including a sexually violent predator specification to the rape and gross sexual imposition counts enumerated in the original indictment and adding two additional counts of contributing to the delinquency of a minor, in violation of R.C. 2919.24(A)(1) and (2). The additional contributing to the delinquency of a minor charges were in regard to Mr. Ditzler's past conduct with Charles and Todd Fern.
On October 19, 1999, the State filed a notice of intent to use other acts evidence. This included the testimony of Charles and Todd Fern. Mr. Ditzler responded in opposition, and after holding a hearing, the trial court ruled that the testimony of Charles and Todd Fern was, in large part, admissible. The trial court also found Mr. Baraga's testimony regarding Mr. Ditzler's prior acts committed against him, for the most part, admissible. However, the trial court dismissed the charges pending against Mr. Ditzler regarding Charles and Todd Fern on March 16, 2000, as beyond the applicable statute of limitations. The sexually violent predator specification in regard to the gross sexual imposition count was also dismissed at trial. The remaining counts were tried to a jury on March 14 through March 22, 2000. The jury was duly charged by the trial court on March 23, 2000, whereupon the cause was submitted to the jury. The jury returned its verdict on March 24, 2000, finding Mr. Ditzler guilty on all the remaining counts. The trial court then conducted the sexually violent predator hearing where additional testimony was taken. The jury was charged on this issue on March 24, 2000, and the issue was submitted to the jury on the same day. The same day, the jury found Mr. Ditzler to be a sexually violent predator. Mr. Ditzler was sentenced accordingly.
 II.
Mr. Ditzler asserts eight assignments of error. We will address each in turn, consolidating his last three assignments of error because they are addressed together in his brief.
 A. First Assignment of Error The trial judge erred, to the substantial prejudice of the Defendant, in admitting the "other acts" testimony of James Baraga, Todd Fern and Charles Fern.
Mr. Ditzler asserts that the trial court improperly allowed testimony in regard to his prior acts with Mr. Baraga and Todd and Charles Fern pursuant to Evid.R. 404(B). We disagree.
"`The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [an appellate] court should be slow to interfere.'" (First alteration in original.) Statev. Maurer (1984), 15 Ohio St.3d 239, 265, quoting State v. Hymore
(1967), 9 Ohio St.2d 122, 128. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency," Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621, or an arbitrary, unreasonable, or unconscionable attitude, Schafer v. Schafer (1996), 115 Ohio App.3d 639,642. Moreover, a new trial should not be granted unless the accused was prejudiced or may have been prejudiced by the evidence improperly admitted. R.C. 2945.83(C).
Generally, evidence of prior criminal acts, wholly independent of the crime for which defendant is on trial, is inadmissible. State v.Thompson (1981), 66 Ohio St.2d 496, 497. R.C. 2945.59 codifies the exceptions to this rule, providing:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Evid.R. 404(B) states that
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evid.R. 404(B) is in accord with R.C. 2945.59. State v. Broom (1988),40 Ohio St.3d 277, 281. "The issue of identity, although not listed in the statute, has been held to be included within the concept of scheme, plan, or system." Id. Hence, it is necessary to determine whether any of the matters enumerated in R.C. 2945.59 were relevant at trial and, if so, whether the testimony that the prosecution elicited regarding other acts of the defendant tended to prove the relevant enumerated matter.State v. Curry (1975), 43 Ohio St.2d 66, 70.
"Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." Broom, 40 Ohio St.3d at paragraph one of the syllabus. Moreover, evidence of other acts by a defendant are only admissible when they tend to show one of the matters enumerated in the statute and only when the evidence offered is relevant to prove that the defendant is guilty of the offense in question. Statev. Burson (1974), 38 Ohio St.2d 157, 158.
Mr. Ditzler challenges the testimony of three persons regarding his prior acts. Mr. Baraga testified that Mr. Ditzler had plied him with alcohol and pornography and then taken him on camping trips where Mr. Ditzler had performed nonconsensual fellatio upon him. However, Charles Fern testified that Mr. Ditzler had only made inappropriate comments to him, mostly regarding masturbation. Todd Fern testified that Mr. Ditzler engaged in inappropriate conversations and other conduct with him.
Mr. Baraga testified about incidents that had happened to him in the 1980s. He testified that Mr. Ditzler would accompany him on Boy Scout trips where Mr. Ditzler would provide him with alcohol and then take advantage of him sexually. He testified that Mr. Ditzler performed oral sex on him. On cross-examination, Mr. Baraga stated that he had spoken with and visited Mr. Ditzler on a monthly basis up until he recalled the abuse after reading a newspaper article on the instant case. Specifically, Mr. Baraga stated:
 [Mr. Ditzler's counsel]: I want to understand what you're saying. You're saying that you had blocked this out of your mind for most of your life, is what you're saying?
[Mr. Baraga]: Yes.
Mr. Baraga also went on a trip to Arizona with Mr. Ditzler, to visit Mr. Baraga's stepsister. The incidents of abuse, which Mr. Baraga now recalls, occurred in the 1980s.
Mr. Ditzler engaged in activities with Charles Fern in the context of a church youth group. Mr. Ditzler engaged in a discussion concerning masturbation and the merits of specific methods of masturbation on the drive to a local beach with Charles Fern. Charles Fern never testified that Mr. Ditzler touched him in a sexual manner, showed him pornography, or plied him with alcohol. Todd Fern, Charles' brother, testified that he met Mr. Ditzler through church and that they were both involved with a local theatrical group. Todd Fern testified that Mr. Ditzler had patted him on the buttocks, bought him cigarettes, pointed out persons who he believed to be homosexual, and took Todd Fern to a local truck stop where Mr. Ditzler asserted homosexuals gathered. Finally, he testified that Mr. Ditzler had gotten Todd Fern excused from school one day and invited Todd Fern to his home to partake of beer and view pornographic movies. However, Todd Fern testified that Mr. Ditzler had never done anything sexual to him and there was no mention of taking camping trips.
The State asserts that the testimony of these three witnesses went to show Mr. Ditzler's identity by highlighting his modus operandi. Mr. Ditzler admitted to having been in the tent with Luke but testified that Luke appeared to have a nightmare resulting in his accusation that Mr. Ditzler had molested him. The Ohio Supreme Court has previously held that identity is not a material issue when the defendant admitted to having been with the victim but denied engaging in sexual conduct with the victim as "[t]his denial did not raise an identity question; it created, instead a factual dispute revolving around [the defendant's] conduct with" the victim during the applicable time frame. Curry,43 Ohio St.2d at 73. Hence, we do not find this argument persuasive. However, we find that the evidence of Mr. Ditzler's prior acts was probative of Mr. Ditzler's intent.
To be convicted of rape or gross sexual imposition by force or threat of force the State must prove that the defendant "purposely compel[led] the [victim] * * * to submit by force or threat of force." R.C.2907.02(A)(2) and 2907.05(A)(1).
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
R.C. 2901.22(A). Mr. Ditzler admitted to being present in the tent with Luke but asserted in his defense that he was merely present while Luke experienced a bad dream or drug induced hallucination. Generally, a defense of mere presence at the crime scene places the intent of the defendant at issue. See, e.g., United States v. Hernandez-Guevara
(C.A.5, 1998), 162 F.3d 863, 870-71; United States v. Moore (C.A.8, 1996), 98 F.3d 347, 350. Accordingly, we conclude that the evidence was properly admitted on the issue of Mr. Ditzler's intent in bringing Luke to the campground and plying him with alcohol and pornography with the purpose of committing forcible rape and gross sexual imposition.
Mr. Ditzler also complains that the State failed to inform him that Mr. Baraga's testimony would be in regard to repressed memories. However, he failed to object on that basis at trial or move for an extension of time so as to better prepare his defense on that issue. Hence, we must resolve whether Mr. Ditzler's complaint presents plain error. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order for this court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. See State v. Lane (1995),108 Ohio App.3d 477, 482, appeal dismissed (1996), 75 Ohio St.3d 1494. We cannot find plain error on the record presented herein. Accordingly, Mr. Ditzler's first assignment of error is overruled.
 B. Second Assignment of Error The trial judge erred, to the substantial prejudice of the Defendant, in not properly Instructing [sic] the jury as to the "other acts" testimony.
Mr. Ditzler asserts that the trial court erred in not giving a limiting instruction to the jury immediately following the testimony of the Ferns and Mr. Baraga. Moreover, he asserts that the limiting instruction which the trial court gave at the close of all evidence was unduly confusing and prejudicial to Mr. Ditzler because the trial court did not indicate the testimony to which it applied. We disagree.
In Baxter v. State (1914), 91 Ohio St. 167, paragraph three of the syllabus, the Ohio Supreme Court held that "[w]here evidence of former offenses is properly admitted to prove intent, it is the duty of the trial court, at the time such evidence is offered, to instruct the jury the purpose for which it is admitted." However, more recently, the Ohio Supreme Court has applied Crim.R. 30(A) to bar the assignment of a trial court's failure to give a limiting instruction to the jury if no limiting instruction was requested as error. State v. Perry (1992),80 Ohio App.3d 78, 84. Specifically, the Ohio Supreme Court has held:
Crim.R. 30(A) provides in relevant part:
 "A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 Having failed to request a limiting instruction, [one] has waived this issue for purposes of appeal.
State v. Davis (1991), 62 Ohio St.3d 326, 339. Such a waiver also occurs if one fails to request a limiting instruction at the time of the presentation of the other acts evidence. Perry, 80 Ohio App.3d at 84.
Herein, Mr. Ditzler failed to request a limiting instruction at the time of the testimony in question. Hence, we conclude that the trial court's failure to give such an instruction at that time cannot now be assigned as error.
Mr. Ditzler next avers that the trial court's instruction was erroneous because the trial court failed to specify the testimony to which it referred. The trial court instructed, in pertinent part:
 Evidence was received about the commission of crimes, wrongs, or acts by the Defendant, other than the offenses with which the Defendant is charged in this trial.
That evidence was received only for a limited purpose.
 It was not received, and you may not consider it, to prove the character of the Defendant, in order to show that he acted in conformity or in accordance with that character.
 If you find that the evidence of other crimes, wrongs, or acts is true, and that the Defendant committed them, you may consider that evidence only for the purpose of deciding whether it proves the Defendant's motive, intent or purpose, or preparation or plan, to commit the offenses charged in this trial.
 The evidence of other acts by the Defendant cannot be considered for any other purpose.
Hence, the trial court did provide a limiting instruction to the jury in regard to this testimony before the jury retired to begin its deliberations. Further, the trial court specified that the instruction was meant to limit the application of the testimony received regarding other acts, crimes, or wrongdoing. "A jury is presumed to follow the instructions given to it by the trial judge." State v. Stallings
(2000), 89 Ohio St.3d 280, 286. Hence, we cannot conclude that the instruction was so unclear as to mislead the jury or confuse it as to which testimony it referred, as the trial court clearly specified what testimony was to be of limited application. Accordingly, Mr. Ditzler's second assignment of error is overruled.
 C. Third Assignment of Error The trial judge erred, to the substantial prejudice of the Defendant, in not taking evidence at the mandatory in chambers hearing, pursuant to the rape shield statutes, before making its findings that the "other acts" testimony should be admitted.
Mr. Ditzler avers that the trial court erred in not taking evidence at the pretrial hearing it held on the admissibility of his previous sexual activity with Mr. Baraga. He asserts that he was prejudiced because he would have received notice that Mr. Baraga's testimony was based on repressed memories, had the trial court required the State to produce the evidence it intended to adduce at trial in regard to Mr. Ditzler's prior sexual conduct. We disagree.
R.C. 2907.02(E) and 2907.05(E) provide, in identical language:
 [p]rior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.
Mr. Ditzler asserts that the trial court erred in failing to require that the other acts evidence concerning his prior sexual activity be elicited at the hearing. He avers that the trial court erred in not requiring the State to present its proposed witnesses in the hearing so that they might be cross-examined by the defendant. Mr. Ditzler argues that, had the trial court required the State to present its witness's testimony, he would have been apprised that Mr. Baraga's testimony was in regard to a repressed memory.
R.C. 2907.02(E) and 2907.05(E) provide that the trial court "shall resolve the admissibility of the proposed evidence in a hearing in chambers. The import of [these] section[s] is that when evidence is to be introduced of prior sexual activity, the trial court must conduct anin camera hearing upon such proposed evidence." State v. Acre (1983),6 Ohio St.3d 140, 143. We can discern no requirement that the proposed witnesses must actually present their proposed testimony at the hearing. Accordingly, we can find no error in the trial court's failure to require the State to present such testimony at the hearing. Mr. Ditzler's third assignment of error is overruled.
 D. Fourth Assignment of Error[1] The trial judge erred, to the substantial prejudice of the Defendant, in permitting both State's Attorney Cillo, and State's trial representative, city [sic] of Lorain Detective Mark Carpentiere, to engage in a continuing effort, throughout the trial: (1) to misrepresent the true nature of the investigation which was conducted by law enforcement authorities in this case, (2) blatantly to misrepresent the nature and significance of DNA and other evidence, and (3) in the case of the State's Attorney, to continually make reference to "evidence" which the trial judge had previously ruled inadmissible.
Mr. Ditzler asserts that the prosecutor committed misconduct by: (1) eliciting testimony from Detective Carpentiere that the reason the Detective did not attempt to collect the watermelon as evidence was that its existence was not in dispute; (2) eliciting testimony that no rape kit was performed because the issue of the perpetrator's identity was not in dispute; (3) allowing Detective Carpentiere to assert that no evidence was collected because the existence of the evidence was not in dispute, the collection of evidence at the campsite was the province of the park rangers, and he was not assigned to investigate the instant case until several days after the incident had transpired; (4) falsely characterizing the testimony presented concerning the potential value of a DNA test in his closing argument; and (5) loudly referring to inadmissible evidence within earshot of the jury. We disagree.
In reviewing allegations of prosecutorial misconduct, this court must bear in mind that the "`touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" State v. Hill (1996), 75 Ohio St.3d 195,203, quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 71 L.Ed.2d 78,87. Prosecutorial misconduct will not serve as grounds for reversal unless the defendant was denied a fair trial. Maurer,15 Ohio St.3d at 266. The defendant must prove that the prosecutor's comments were improper and that they prejudicially affected his or her substantial rights. State v. Smith (1984), 14 Ohio St.3d 13, 14.
Mr. Ditzler asserts that the prosecutor committed misconduct by adducing testimony that evidence was not collected because there was no dispute as to its existence or as to the issue on which it was probative. We can not find this to have been misconduct as Mr. Ditzler challenged the lack of physical evidence in this case. Further, the testimony presented by the State was not in conflict with Mr. Ditzler's theory of the case; indeed, he admitted that alcohol was present but averred that he was not the one who provided it. He also admitted to having been present when Luke was sexually molested but averred that Luke had just had a nightmare. Hence, neither the presence of alcohol at the campsite nor the identity of the alleged perpetrator of the molestation was at issue. Accordingly, we find no prosecutorial misconduct or prejudice to Mr. Ditzler in regard to this testimony.
Mr. Ditzler asserts that the prosecutor committed misconduct in presenting various reasons why physical evidence was not collected in this case. However, we cannot conclude that this was misconduct on the part of the prosecutor; rather, the testimony was properly presented as rebuttal to Mr. Ditzler's arguments concerning the lack of physical evidence herein. Mr. Ditzler discussed the lack of physical evidence in his opening statement.
The prosecutor stated, in his closing argument, that "when I asked [Mr. Ditzler's expert on DNA] if there was no DNA or epithelial cells on Luke's penis, would that have had any evidentiary significance about whether he was raped? No. That was his answer. No." Mr. Ditzler asserts that such an argument was improper. Mr. Ditzler's expert on DNA admitted that "a DNA sample would not have confirmed whether there was forced sex in this case[.]" "Generally, parties are granted a certain amount of latitude in closing argument." State v. Thompson (1987),33 Ohio St.3d 1, 14. Further, "[t]he test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." Smith, 14 Ohio St.3d at 14. Upon review of the testimony at trial and the prosecutor's statement in closing argument, we cannot conclude that the prosecutor committed misconduct. Mr. Ditzler was charged with rape and gross sexual imposition by force or threat of force; hence, whether his DNA was present on Luke's genitals would not necessarily show guilt or innocence in terms of the force element of the crime charged. Accordingly, we can find no prosecutorial misconduct in regard to the prosecutor's statement in closing argument.
Lastly, Mr. Ditzler asserts that the prosecutor committed misconduct when he made statements concerning evidence, which was inadmissible during sidebar conferences in a loud enough voice to be overheard by the jury. The record before this court does not demonstrate the volume of the prosecutor's voice or whether the jury overheard his statements. Hence, we decline to surmise as to what the jury may have heard when the record does not support a conclusion on the matter. Mr. Ditzler also avers that it was misconduct for the prosecutor to inquire concerning the prior conduct testified to by Mr. Baraga and the Ferns; however, as previously noted, that evidence was admissible. Accordingly, we cannot conclude that the prosecutor committed misconduct in this regard or that Mr. Ditzler was prejudiced thereby. Mr. Ditzler's fourth assignment of error is overruled.
 E. Fifth Assignment of Error The trial judge erred, to the substantial prejudice of the Defendant, in permitting the State's attorney, either directly or through thinly veiled innuendos, continually throughout the trial to characterize the Defendant as a "homosexual," and to suggest that that fact in itself was somehow probative of Defendant's guilt of the offenses charged.
Mr. Ditzler asserts that he was prejudiced by the prosecutor's comments and questions concerning his sexual orientation. We disagree.
As noted above, prosecutorial misconduct will not serve as grounds for reversal unless the defendant was denied a fair trial. Maurer,15 Ohio St.3d at 266.
The crimes herein were committed by a male upon a male. The evidence present would, by definition, implicate a homosexual orientation on Mr. Ditzler's part. Further, upon review of the record herein, we cannot find that the prosecutor made excessive references to the evidence that tended to show a homosexual bent to Mr. Ditzler's actions. Just as evidence of the rape of a female by a male would tend to show a heterosexual interest on the part of the perpetrator, evidence of one male raping another shows a homosexual interest on the part of the perpetrator. Further, Mr. Ditzler testified that he had a biological son, implying that he has engaged in heterosexual intercourse, and hence, is a heterosexual who would not be interested in having a sexual relationship with another male. In rebuttal, the prosecutor inquired, and Mr. Ditzler admitted, that he was not the biological father of his son. Hence, we cannot conclude that the prosecutor committed misconduct in regard to referencing Mr. Ditzler's sexual orientation. Mr. Ditzler's fifth assignment of error is overruled.
 F. Sixth Assignment of Error The trial judge erred, to the substantial prejudice of the Defendant, failing to dismiss the sexually violent predator specification to the rape charge in the original indictment, when the specification is not set forth at the end of the indictment of after the rape charge, nor is it even contained in the same indictment, as is required by Revised Code section 2941.148.
 Seventh Assignment of Error The trial judge erred, to the substantial prejudice of the Defendant, in failing to dismiss the sexually violent predator specification against the Defendant, for the reason that its terms are too vague to be susceptible of interpretation, at least as applied to this Defendant, and that it attempts to punish a status or condition, rather than an act.
 Eight Assignment of Error The trial judge erred, to the substantial prejudice of the Defendant, in instructing the Jury that they were to determine whether the Defendant was or was not "guilty," not of an act, but of a "likelihood," when such an inquiry was necessarily an exercise in linguistic gibberish.
Mr. Ditzler asserts that the he was not properly charged with the sexually violent predator specification to the rape charge. Further, he avers that the sexually violent predator specification is void for vagueness, that the trial court's instruction was too vague, and that the facts did not support the jury's finding. We disagree. We will address each of Mr. Ditzler's arguments in turn.
Mr. Ditzler first asserts that he was not properly indicted on the sexually violent predator specification to the rape charge because the grand jury separately indicted Mr. Ditzler on the sexually violent predator specification, while R.C. 2941.148(A) provides that the specification shall be set forth in the indictment "charging the sexually violent offense" and that "[t]he specification shall be stated at the end of the body of the indictment[.]" Further, he asserts that the grand jury failed to consider the specification with reference to the rape charge and that the trial court did not announce its decision to submit the sexually violent predator specification to the jury until after the jury returned its verdict on the counts charged in the initial indictment.
"Crim.R. 7 controls the sufficiency of and amendments to criminal indictments." State v. O'Brien (1987), 30 Ohio St.3d 122, 124. Crim.R. 7(D) provides that "[t]he court may at any time before, during, or after a trial amend the indictment * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Further, "no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted." Crim.R. 7(D).
Mr. Ditzler's counsel had notice of the prosecution's intent to pursue the sexually violent predator specification in January 2000, while the trial did not commence until March 2000. Further, Mr. Ditzler's counsel proceeded to defend against the specification and neither moved for a continuance nor averred prejudice due to a lack of notice of the crime charged. Moreover, upon review of the sexual predator hearing, it is clear that Mr. Ditzler's counsel prepared for the hearing and was not surprised by the proceeding. Finally, the sexually violent predator specification was submitted to and passed upon by the Lorain County Grand Jury.
In a somewhat analogous case, the Ohio Supreme Court held that "[t]he state may not amend an indictment pursuant to Crim.R. 7(D) so as to include a specification contained in R.C. 2941.143 without first presenting the specification to the grand jury or following the other alternatives contained in R.C. 2941.143." State v. Dilley (1989),47 Ohio St.3d 20, syllabus. The provisions of R.C. 2941.148 in regard to its placement in the indictment are substantially similar to the former R.C. 2941.143.
The specification herein was submitted to the Lorain County Grand Jury; hence, we must determine whether amendment could have been effectuated under Crim.R. 7(D). Dilley, 47 Ohio St.3d at syllabus. The crime charged was rape by force or threat of force, in violation of R.C.2907.02(A)(2), a violent sex offense. R.C. 2971.01(L). Upon review of the crime charged and the sexually violent predator specification, an amendment could have been properly allowed by the trial court pursuant to Crim.R. 7(D), as the addition of the sexually violent predator specification would not change the identity or nature of the crime charged. Hence, without passing on the amendment procedure, we cannot conclude that Mr. Ditzler was prejudiced by the filing of the second indictment or the trial court's apparent lack of an explicit ruling on the propriety of the amendment, as we conclude that no failure of justice occurred due to the amendment procedure presented in this cause.
Mr. Ditzler also challenges the sexually violent predator specification, contained in R.C. 2941.148, as void for vagueness. As the sexually violent predator specification enhances one's sentence pursuant to R.C. 2971.03, it is punitive and must be found to be present beyond a reasonable doubt. State v. Ward (1999), 130 Ohio App.3d 551, 567. However, R.C. 2941.148(B) provides that one is a sexually violent predator if, based on the factors enumerated in R.C. 2971.01(H)(1)-(6), "it is likely that the person will engage in the future in one or more sexually violent offenses." Mr. Ditzler avers that: (1) a finding that one is, beyond a reasonable doubt, likely to commit a sexually violent offense in the future is void for vagueness, and (2) the trial court erred in giving an instruction to that effect to the jury.
The finder of fact's determination of "beyond a reasonable doubt" refers to the amount of proof required, whereas "likely" refers to the defendant's propensity to commit sexually violent offenses in the future. See State v. Hargis (Feb. 11, 1999), Cuyahoga App. No. 72540, unreported, 1999 Ohio App. LEXIS 434, at *8 (applying this analysis to a sexual predator adjudication). The Ohio Supreme Court discussed vagueness in State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals
(1992), 63 Ohio St.3d 354, 358 stating that "[the concept of vagueness] implies that a statute must be written so that a man of common intelligence can ascertain what conduct is prohibited, and that the law must provide sufficient standards to prevent arbitrary and discriminatory enforcement." It is not illogical or unclear to require the finder of fact to determine by proof beyond a reasonable doubt that the offender is likely to commit sexually violent offenses in the future. Hence, we cannot find R.C. 2941.148 to be void for vagueness or the trial court's jury instruction to have been in error.
Lastly, Mr. Ditzler challenges the quantum of evidence upon which the jury found him to be a sexually violent predator. When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Mr. Ditzler asserts that there was no evidence that he had previously engaged in violent sexual crimes. The term "[s]exually violent offense," as it is used in R.C. 2941.148(B), means "a violent sex offense[.]" R.C. 2971.01(G). A "[v]iolent sex offense" means "[a] violation of section 2907.02, 2907.03, or 2907.12 or of division (A)(4) of section2907.05 of the Revised Code[.]" R.C. 2971.01(L)(1). Hence, despite the lack of violence in his previous sex acts, the other acts may qualify as "sexually violent offenses" due to Mr. Ditzler's position, see R.C.2907.03. Moreover, Mr. Ditzler's conduct demonstrates a trend toward increased violence. Hence, we cannot find the jury's finding that he is a sexually violent predator to be a manifest miscarriage of justice. Mr. Ditzler's sixth, seventh, and eight assignments of error are overruled.
 III.
Mr. Ditzler's assignments of error are overruled. The verdict of the Lorain County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
___________________________ WILLIAM G. BATCHELDER
SLABY, J., WHITMORE, J., CONCUR.
[1] Mr. Ditzler's arguments do not appear to match his assignments of error. Rather, his arguments appear to be in a different order than his assignments of error. We will address his assignments of error in the order in which his arguments are presented, matching the arguments presented with the assignment of error which most closely approximates them.